IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| **CRAIGG DOBBS** and **EILEEN DOBBS**,<br>     Plaintiffs<br>vs.<br>**UNITED STATES OF AMERICA**,<br>     Defendant | No. 4:20-cv-01192-LPR |

**PLAINTIFFS' RESPONSE TO GOV'T MOTIONS IN LIMINE**

The Court should deny the Government's motion to exclude CDC published Life Tables, all demonstrative evidence, and Ms. Dobbs hospital notes. ECF No. 30.[1] The Government also moved to prevent its expert from testifying they violated the standard of care and such violations caused injury to Mr. Dobbs. ECF No. 31. The Court should narrowly tailor this request to the limits of Arkansas law.

**CDC LIFE TABLES**

Here, the Government objects that the CDC's Life Tables are hearsay, claims that the Court will be confused by this evidence, and that the evidence is cumulative. ECF No. 30, at 3–4 (citing Fed. R. Evid. 801, 802, 402, 403). In contrast, the CDC and HHS believe and represent that, "**This document is hereby certified as an official federal document and is fully**

---

[1] Plaintiffs concede and withdraw the "What's in your cup" video of Mr. and Mrs. Dobbs discussing their medical experience with their pastor. Plaintiffs also concede and withdraw Ms. Dobbs' Facebook posts.

**admissible as evidence in federal court.**" *E.g.*, Elizabeth Arias, *United States Life Tables*, 61 Nat'l Vital Stat. Reps. 3, at 64 (2012) (emphasis in original).[2] Plaintiffs ask the Court to take the Government at its word and admit the Life Tables into evidence.

1. *Hearsay*

To begin, this evidence is *not* hearsay because it's a statement made by an opposing party. *See* Fed. R. Evid. 801(d)(2); *United States v. Katter*, 840 F.2d 118, 130–131 (1st Cir. 1988) (admitting statements by the DOJ). The United States concedes that its agencies, the Department of Health and Human Services and Centers for Disease Control, publish this evidence. ECF No. 30, at 4.

But even if it were hearsay, it would meet multiple exceptions to the hearsay rule. First, the CDC's Life Tables are a public record under Rule 803(8). It's a "record or statement of a public office" that sets out factual findings. *Id.* In this case, the Life Tables set factual findings concerning life expectancies of the population of the United States.

What's more, the CDC Life Tables meet the Public Records of Vital Statistics exception to the hearsay rule. Fed. R. Evid. 803(9). They are vital statistics "reported by a public office in accordance with a legal duty." *Id.*

Next, with proper predicate, Plaintiffs may even use this as a learned treatise. Fed. R. Evid. 803(18). That rule allows an expert to "read into

---

[2] *Available at* https://www.cdc.gov/nchs/data/nvsr/nvsr61/nvsr61_03.pdf. All the CDC life tables are publicly available on the CDC's website.

evidence" any treatise or periodical that is established as reliable authority by the expert's testimony or judicial notice. *Id*.

But even if it didn't meet any of those exceptions, the Court may take judicial notice of the evidence in the Life Tables because the vital statistics discussed "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Taylor v. Otter Tail Corp.*, 484 F.3d 1016, 1020 n.7 (8th Cir. 2007) (noting that the trial court took judicial notice of the life tables); *Comm'r of Internal Revenue v. Meyer*, 139 F.2d 256, 259 (6th Cir. 1943) ("The life tables were not in evidence but of them we may take judicial notice.").[3]

### 2. *Relevance*

Next, the Government objects to relevance after all but conceding relevance when it notes Plaintiffs' experts relied on the documents. ECF No. 30, at 5. As the Court knows, relevance is a very low bar. *See* Fed. R. Evid. 104(b).

Not spending much time on relevance, the Government quickly jumps to Rule 403, asking this Court to hold that it will be confused by the cumulative evidence. ECF No. 30, at 5. But unlike relevance, Rule 403 presents a much higher bar for the Government to clear. *See* Fed. R. Evid. 403. It requires that the probative value be "substantially outweighed" by the danger of "unfair" prejudice, confusion, or cumulative evidence. *Id*. On one side, there's significant probative value in helping to explain experts' opinions. Moreover,

---

[3] If the Court does not admit this evidence under the many exceptions provided above, Plaintiffs request—under Fed. R. Evid. 201(c)(2)—that the Court take judicial notice of the CDC Life Tables.

the Court will have to decide life expectancy—and what better evidence than the Government's own words? Finally, the documents are not cumulative—instead, the combined documents put out both the data and the methodology.

But on the other side, the Government admits that in a bench trial, "the Court can appropriately weigh the evidence." ECF No. 30, at 4. The danger that the Court would be confused is non-existent, but in any event does not create the "unfair prejudice" that would "substantially" outweigh the probative value of the evidence. Fed. R. Evid. 403.

In sum, the Life Tables are relevant and not hearsay. Moreover, the Court can take judicial notice of these Government publications and statements about life expectancy under Rule 201. They should be admitted.

## DEMONSTRATIVE AIDES

Next, the Government objects to certain demonstrative evidence, even evidence that the Plaintiffs have not yet created, as inadmissible because it was not produced in discovery. This includes a medical animation, the day in the life video, and other yet-to-be-created (or even thought of) demonstrative aides.

1. *Animation*

To be very clear, the substantive evidence has been produced to the Government. For example, Plaintiffs' experts in detail explained in a written report the exact mechanism of harm. And their explanations line up with the Government's treating doctors' testimony and the medical records. So, the Government's only objection is that the manner of explaining this expert

testimony in animation form is prejudicial. But an animation explaining the previously disclosed evidence is no more prejudicial than an expert using a drawing, a PowerPoint, or even a physical model of the brain to explain his previously disclosed testimony.

And the "use of charts, diagrams, and other visual aids to summarize other evidence is generally permissible in the sound discretion of the trial court, particularly when used to organize complex testimony."[4] *Asarco LLC v. NI Industries, Inc.*, 106 F. Supp. 3d 1015, 1024 (E.D. Mo. 2015); *see also Tritek Technologies, Inc. v. United States*, 67 Fed. Cl. 727, 729 (2005) (defining demonstrative aide as evidence "used to explain or illustrate testimony (or other evidence) that is already in the record."). Because animations are used to illustrate witness testimony, "generally the only foundation necessary [is] testimony of a knowledgeable witness that the animation fairly and accurately depicts what its proponent claims." Christopher Mueller & Laird Kirkpatrick, Evidence, 1150–51 (5th ed. 2012).

Their use is recognized by the advisory committee to the Federal Rules of Evidence. *E.g.*, Fed. R. Evid. 611 Advisory Committee Note ("the use of demonstrative evidence [is left to the] judge's common sense and fairness in view of the particular circumstances."). Thus, courts uniformly hold that demonstrative aids that summarize or explain testimony—while not

---

[4] Because demonstrative aides are not specifically mentioned in the rules, the Rules Advisory Committee is currently considering an amendment that would reflect the current state of the law. They specifically note, "Because illustrative aids are not evidence, **adverse parties do not receive pretrial discovery of such aids**." Advisory Comm., *Request for Comment*, at 280 (Aug. 15, 2022) (emphasis added), *available at* https://www.uscourts.gov/sites/default/files/preliminary_draft_of_proposed_amendments_to_the_federal_rules_2022_0.pdf

admitted into evidence—can be used during trial. *E.g.*, *Jones v. Wiseman*, No. 18-CV-02197, 2019 WL 12758126, at *2 (W.D. Tenn. June 3, 2019) (allowing PowerPoint medical illustrations for demonstrative purposes); *United States v. Blackwell*, 954 F. Supp. 944, 971 (D.N.J. 1997).

In this case, the Government argues that the harm to Mr. Dobbs occurred through a "medically complex chain of events leading to a brain bleed." Tr. Br. Gov't at 2. So, with proper predicate, these demonstrative aids will be helpful to the trier of fact in understanding how the Government's neglect resulted in injury to Mr. Dobbs.

2. *Day in the Life Video*

The same is true for the day in the life video or any other evidence explaining testimony. For example, Ms. Dobbs could testify—and has testified in deposition—to everything in the day-in-the-life video without objection—as it's literally a day in her and her husband's life. So, it's not the substantive information the Government objects to—it's the form. And when it comes to form over substance, the only question for the Court is whether it would be helpful to the Court in understanding her testimony to see images of the experiences she testifies occurs in her life. Plaintiffs request the Court give them the opportunity to demonstrate its helpfulness at trial.

Notably, the Government provides a four-factor test for the admissibility of the day in the life video. ECF No. 30, at 3–4. Of course, this test determines whether the evidence is *admitted*, not whether it can be used as a demonstrative aide. But when at least two, if not three of the factors favor

admission, the Government pivots away from the test to hearsay.[5] *Id.* at 4. To the extent there are captions or other statements in the videos, the Court can still allow their use for demonstrative purposes only. *See* Fed. R. Evid. 105 (limiting use of evidence for one purpose); Fed. R. Evid. 801(c) (hearsay must be offered to prove the truth of the matter asserted—in this case, captions can be taken not for the truth as the witness can testify and can be cross examined as to the substantive evidence).

For example, one federal court admitted—*fully* and not merely for demonstrative purposes—a day in the life video where a "if subject to cross-examination through a witness who verifies the film." *Grimes v. Employers Mut. Liability Ins. Co. of Wisc.*, 73 F.R.D. 607, 610–611 (1977) (also overruling cumulative and prejudice objections). But that court held that even if the video were hearsay, it would be admissible under the residual exception. *Id.* at 611; *see also Arnold v. Burlington N. R. Co.*, 748 P.2d 174, 176 (Or. App. 1988) (no abuse of discretion in admitting day in the life video).

In sum, the Court should allow Plaintiff to use all demonstrative aides—like the Dobbs' video and medical animations—that would be helpful to explaining or demonstrating testimony.

## HOSPITAL NOTES

Then, the Government claims that the contemporary, handwritten notes that Ms. Dobbs took. ECF No. 30, at 3. These notes recount a timeline of events that occurred during the hospital stay, which is the basis of this

---

[5] The Government notes that Mr. Dobbs will not testify at trial, but that's only because parties have stipulated to that.

lawsuit. However, the very first hearsay exception allows for statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1); *United States v. Ferber*, 966 F. Supp. 90, 97 (D. Mass. 1997) (admitting handwritten notes where they "were nothing more than a recital" of events). Moreover, Rule 803(4) allows in statements that are "made for—and reasonably pertinent to—medical diagnosis or treatment" and "describes medical history."

Either of these exceptions allow Ms. Dobbs' contemporaneous notes of her husband's medical care into evidence.

## STANDARD OF CARE TESTIMONY

Finally, the Government asks this Court to exclude testimony of its own doctors that they violated the standard of care and such violations caused injury to Plaintiff. ECF No. 31, at 2 (citing Ark. Code Ann. § 16-114-207(3) (1987)). However, this rule is limited.

There are broad factual questions that Plaintiffs can ask the Government's doctors that do not violate the rule. *E.g.*, *Befell v. Williams*, 386 S.W.3d 493, 505 (Ark. 2012) ("the nurses could certainly testify as to the facts"); *Miller v. Broadway Health & Rehab LLC*, No. 3:16-CV-255, 2018 WL 999907 (E.D. Ark. 2018) (standard of care testimony is out, "unless the door is opened…Testimony about the facts is in.").

Plaintiffs can impeach a providers' credibility, establish evidence of the locality rule, and otherwise generally illicit factual medical testimony. For example, this rule is not violated if the plaintiff forces the defendant to admit he lacks certain qualifications or credibility. *See e.g.*, *Jackson v. Buchman*,

996 S.W.2d 30, 35–36 (Ark. 1999) (error to exclude the lack of a board certification). Moreover, this Court permitted proof of the locality rule through the testimony of a defendant doctor. *First Com. Trust Co. v. Rank*, 915 S.W.2d 262, 267 (Ark. 1996) (being called to proffer testimony about locality practice does not violate rule); *McMullin v. United States*, 515 F. Supp. 2d 909, 912–914 (E.D. Ark. 2007) (same). And of course, to the extent the United States intends to illicit such testimony, Plaintiffs should be allowed to cross examine on the same. *See e.g.*, *Brown v. United States*, 356 U.S. 148, 156–57 (1958) (criminal defendant who testifies cannot invoke immunity to cross on matters he has put in dispute); *see also Stogsdill v. Roman*, No. 4:08-cv-207, 2010 WL 11530415, at *1 (E.D. Ark. 2010) (granting motion against compelling expert testimony "subject to reconsideration at trial if the door has been opened…").

## CONCLUSION

The Court should reject the Government's objections to the CDC's Life Tables; Ms. Dobbs' contemporaneous hospital notes; and allow parties to use demonstrative evidence to explain testimony. And the Court should not limit the Government doctors' testimony further than the Arkansas statute.

Respectfully Submitted,

/s/ Laurie Higginbotham
LAURIE HIGGINBOTHAM,
   *pro hac vice*
lhigginbotham@nationaltriallaw.com
Texas State Bar #50511759

TOM JACOB,
   *pro hac vice*
tjacob@nationaltriallaw.com
Texas State Bar #24069981
WHITEHURST, HARKNESS,
   BREES, CHENG, ALSAFFAR,
   HIGGINBOTHAM, & JACOB
   P.L.L.C.
1114 Lost Creek Blvd, Ste. 410
Austin, TX 78746
(512) 476-4346 (o)
(512) 467-4400 (f)

GEORGE WISE
gwise@bradhendricks.com
Arkansas State Bar #78171
THE BRAD HENDRICKS LAW
   FIRM, LLP
500 C Pleasant Valley Drive
Little Rock, Arkansas 72227
(501) 221-0444

Attorneys for the Plaintiffs